Michael AMATO and Deborah Amato, Plaintiffs/Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant/Respondent.

No. ED 87209.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 30, 2007.

Thomas P. Connelly, St. Louis, MO, for appellants.

Daniel E. Wilke, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The plaintiffs, Michael and Deborah Amato, appeal the judgment entered upon an adverse jury verdict by the Circuit Court of St. Louis County in favor of their under-insured-motor-vehicle carrier, State Farm Mutual Automobile Insurance Company. The plaintiffs claim the trial court erred in denying their motion for a directed verdict in the plaintiffs' favor at the close of all the evidence. However, because the Amatos' settlement with the other driver, which State Farm negotiated as the other driv-

ers' liability-insurance carrier, did not estop State Farm from litigating the negligence issue and because the Amatos failed to establish fault on the part of the other driver, we affirm the judgment of the trial court.

### Facts

In September 1994, Michael Amato was involved in a collision with a motor vehicle operated by Kurt Sherwood in St. Louis County. Mr. Amato testified that he was traveling northbound on the interstate in the right lane when Mr. Sherwood's vehicle, which was traveling in the same direction, struck the median wall between the northbound and southbound lanes. Mr. Sherwood's vehicle spun across the northbound traffic lanes, struck Mr. Amato's vehicle head-on, and then struck Mr. Amato's vehicle a second time from the rear.

State Farm was the liability-insurance carrier for Mr. Sherwood as well as the underinsured-motor-vehicle carrier for the Amatos. The Amatos sued Mr. Sherwood, seeking damages for Mr. Amato's injuries and Mrs. Amato's loss of consortium. The Amatos and Mr. Sherwood settled the lawsuit for Mr. Sherwood's $50,000 liability-policy limits, with State Farm's approval and payment of the settlement amount. The Amatos executed a "Release in Full," which "release[d] and forever discharge[d] Kurt William Sherwood, his family, agents, and insurance carriers from any and all rights, claims, demands, and damages of any kind" and acknowledged that the release was not an admission of fault on the part of any released party. The release also specifically provided that it would have no effect on any claim the Amatos may have against their underinsured-motor-vehicle carrier.

Following settlement with Mr. Sherwood, the Amatos filed suit against State Farm seeking damages under their underinsured-motor-vehicle coverage for personal injuries, loss of earnings, loss of consortium, and vexatious refusal to pay. At trial, the plaintiffs moved for a directed verdict in their favor at the close of all the evidence on the question of State Farm's liability to them as their underinsured-motor-vehicle carrier. The trial court denied that motion and instructed the jury that a finding of negligence on the part of Mr. Sherwood was necessary for a verdict in favor of Mr. Amato. Likewise, the jury was instructed that its verdict must be for State Farm unless the jury believed that Mr. Sherwood was negligent.[1] The jury

---

1. The verdict director instructed:

> Your verdict must be for Michael Amato if you believe:
> First, Kevin [sic] Sherwood was the operator of an underinsured motor vehicle; and
> Second, Kevin [sic] Sherwood failed to maintain his vehicle in a single lane of traffic; and
> Third, Kevin [sic] Sherwood was thereby negligent; and
> Fourth, as a direct result of such negligence, plaintiff Michael Amato sustained damage.
> The term "underinsured motorist" as used in this instruction means a land motor vehicle:

> 1. The ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and
> 2. Whose limits of liability for bodily injury liability:
> a. are less than the amount of the insured's damages; or
> b. have been reduced by payments to persons other than the insured to less than the amount of the insured's damages.
> The converse instruction provided:
> Your verdict must be for defendant State Farm Mutual Automobile Insurance Company on the claim of plaintiff Michael Amato, unless you believe Kurt Sherwood was negligent and such negligence directly caused or directly contributed to cause damage to plaintiff Michael Amato.

returned a verdict in favor of State Farm. The trial court then denied the Amatos' motion for judgment notwithstanding the verdict or for a new trial, which reasserted the plaintiffs' claim that they were entitled to a directed verdict in their favor. This appeal follows.

## Discussion

■ In their single point on appeal, the Amatos claim the trial court erred in denying their motion for directed verdict at the close of all the evidence on the issue of State Farm's liability to them as their underinsured-motor-vehicle carrier and in denying their post-trial motion, which repeated their claim. As a general rule, a verdict may not be directed in favor of the proponent, who has the final burden of proof. *Brandt v. Pelican,* 856 S.W.2d 658, 664 (Mo. banc 1993)(quoting *Coleman v. Jackson County,* 349 Mo. 255, 160 S.W.2d 691, 693 (1942)). The exception to the rule applies where the opponent admits the truth of the basic facts upon which the proponent's claim rests or where the proof is altogether of a documentary nature with the documents' authenticity and correctness unquestioned. *Id.* If such proof establishes beyond all doubt the truth of facts, which as a matter of law entitle the proponent to the relief sought, then the proponent is entitled to a directed verdict. *Id.*

■ The Amatos, as plaintiffs, had the burden of proof in their suit against their underinsured-motor-vehicle carrier. *Ward v. Allstate Ins. Co.,* 514 S.W.2d 576, 577–78 (Mo. banc 1974); *Hill v. Seaboard Fire & Marine Ins. Co.,* 374 S.W.2d 606, 609 (Mo. App.K.C.D.1963). Nevertheless, they claim the trial court should have directed a verdict in their favor despite the jury's failure to find fault by the other driver. The Amatos argue that, because State Farm is both the liability insurer for Mr. Sherwood and the Amatos' underinsured-motor-vehicle-insurance carrier, they did not have to prove Mr. Sherwood's negligence in order to prevail on their underinsured-motor-vehicle claim. Rather they contend that State Farm is estopped from requiring them to prove Mr. Sherwood's negligence because State Farm approved and paid the settlement as liability-insurance carrier for Mr. Sherwood. State Farm counters that the Amatos' settlement with Mr. Sherwood did not relieve the Amatos of the requirement to establish Mr. Sherwood's negligence at trial on the underinsured-motor-vehicle claim. State Farm argues that because the Amatos did not obtain a judgment on the merits against Mr. Sherwood, the doctrine of collateral estoppel does not apply.

We affirm the trial court's judgment. The Amatos did not establish their entitlement to a directed verdict in their favor against their underinsured-motor-vehicle carrier. Simply put, they never established the other driver's fault for the accident and the damages that ensued. The single reed upon which they rest their argument—the release negotiated by State Farm as liability-insurance carrier—cannot support its weight because the release by its very terms provides that it "is not an admission of fault on the part of any of the released parties." The release precludes its use against an underinsured-motor-vehicle carrier, stating "This release shall not effect [sic] any claim which the undersigned may have against any of the undersigned's underinsured motorist carriers." And because the Amatos were not entitled to prevail by virtue of the release, they were required as plaintiffs to prove legal entitlement to damages. However, they failed in this proof because they never established fault on the part of Mr. Sherwood.

The Amatos claim that State Farm is estopped from litigating the issue of Mr. Sherwood's negligence because of the settlement with Mr. Sherwood. However, the doctrine of issue preclusion, or collateral estoppel, would not prevent State Farm from litigating the issue. The Amatos' suit against Mr. Sherwood did not proceed to judgment on the merits as would be required for the doctrine of issue preclusion to apply. *State ex rel. Sago v. O'Brien,* 827 S.W.2d 754, 756 (Mo.App. E.D.1992). Furthermore, we hold that the plain language of the release defeats the argument advanced by the Amatos. The settlement cannot prove Mr. Sherwood's liability when the release provides that it is not an admission of Mr. Sherwood's fault. And the settlement cannot dictate the outcome of the Amatos' underinsured-motor-vehicle claim when the release provides that it will have no effect on such a claim.

■ Given the language of the release, the Amatos were then required to prove legal entitlement to damages in order to collect on their underinsured-motor-vehicle claim. The Amatos' State Farm policy provides in relevant part:

We will pay damages for ***bodily injury*** an ***insured*** is legally entitled to collect from the owner or driver of an ***underinsured motor vehicle.*** The ***bodily injury*** must be caused by accident arising out of the operation, maintenance or use of an ***underinsured motor vehicle.***

The parties' dispute hinges on the meaning of the phrase "legally entitled to collect," which is not defined in the Amatos' insurance policy. The Amatos reiterate that settlement with Mr. Sherwood establishes that they are "legally entitled to collect" from him, and so they did not have to prove Mr. Sherwood's negligence at trial. We disagree.

The language "legally entitled to recover" is undoubtedly intended to mean that a claimant is only entitled to indemnification for injuries resulting from the tortious conduct of an underinsured motorist. Furthermore, if there is a dispute about whether tortious acts of an underinsured motorist caused the injuries sustained by an insured, it is virtually undisputed that the burden of proof on the negligence issue initially rests with the claimant.

3 Alan I. Widiss & Jeffrey E. Thomas, Uninsured and Underinsured Motorist Insurance sec. 34.1, at 168 (3d ed. rev.2005).[2] In *Lewis v. State Farm Mutual Automobile Insurance Company,* this Court examined an underinsured-motor-vehicle-coverage provision identical to the one contained in the Amatos' policy. *Lewis v. State Farm Mut. Auto. Ins. Co.,* 857 S.W.2d 465, 466 (Mo.App. E.D.1993). The Court determined that under such a provision, the insured must demonstrate that he or she received bodily injuries, that the injuries resulted from an incident involving an underinsured vehicle, and that the insured is legally entitled to collect from the owner of the underinsured vehicle. *Id.* at 466–67 (citing *Sago,* 827 S.W.2d at 755). "For an insured to be legally entitled to collect, there must be a prior, judicially enforceable determination of liability and damages." *Id.* at 467; *see also Sago,* 827 S.W.2d at 755.

■ We are additionally guided by an examination of legal entitlement to damages in cases of uninsured-motor-vehicle

**2.** Although the language in the State Farm policy in this case is "legally entitled to collect" instead of "legally entitled to recover," we agree with our colleagues in the Western District that there is no legal distinction between these phrases. *Kesterson v. Wallut,* 157 S.W.3d 675, 686 n. 9 (Mo.App. W.D.2004).

coverage.[3] To recover under an uninsured-motor-vehicle policy, the insured does not need an unsatisfied judgment against the uninsured vehicle's owner and/or operator. *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 715 (Mo. banc 1979). However, the insured has the burden of proving that the other driver was uninsured, that the other driver is legally liable to the insured, and the amount of damages. *Id.* The legal liability element is equivalent to the contractual requirement that the insured be "legally entitled to recover." *Id.* The phrase "legally entitled to recover" refers to fault on the part of the uninsured motorist. *Reese v. Preferred Risk Mut. Ins. Co.,* 457 S.W.2d 205, 208 (Mo.App.St.L.Dist.1970). Here, of course, the Amatos had released Mr. Sherwood and could not obtain a judicially enforceable determination of liability and damages against Mr. Sherwood. But, that being said, nothing prevented the Amatos from proving Mr. Sherwood's fault and the resulting damages. Indeed, at trial, the Amatos adduced evidence of Mr. Sherwood's fault and of their damages. The jury, however, never found fault on the part of Mr. Sherwood.

The Amatos urge us to adopt the reasoning of the Montana Supreme Court in *Dill v. Montana Thirteenth Judicial Dist. Court,* wherein the Court held that, "The common[-]sense reading of the language of the [underinsured-motor-vehicle] policy leads to the logical conclusion that if one collects damages, one is legally entitled to do so." *Dill v. Montana Thirteenth Judicial Dist. Court,* 294 Mont. 134, 979 P.2d 188, 192 (1999). In reaching its conclusion, the *Dill* Court stated:

The question of whether anyone was at fault and the question of whether the insured is legally entitled to collect damages from the underinsured driver are not the same.

... The critical point to be noted is that the State Farm policy only requires that the insured show that he or she is legally "entitled to collect damages"—not prove fault.

*Id.*

We decline to accept the Montana Court's reasoning because our courts have held that the phrases "legally entitled to recover" and "legally entitled to collect" require the insured to show a "judicially enforceable determination of liability," *Lewis,* 857 S.W.2d at 467, or "causal negligence or fault," *Oates,* 583 S.W.2d at 716. We have found only one case outside Montana that cites *Dill.* In that case, the Washington appellate court expressly rejected what it called *Dill's* "simplistic conclusion" as incompatible with Washington state law, which requires, as Missouri does, proof of fault on the part of the underinsured driver in order for a claimant to prevail in an underinsured-motor-vehicle action. *McIllwain v. State Farm Mut. Auto. Ins. Co.,* 136 P.3d 135, 138–39 (Wash.Ct.App.2006). The *McIllwain* Court noted that a liability carrier's settlement with a claimant does not, without more, establish that its insured is liable to the claimant. *Id.* at 139.

In this case, the Amatos settled with Mr. Sherwood for his liability-insurance-policy limits. The Amatos signed a release of Mr. Sherwood in which they acknowledged that the release would have no effect on an

---

**3.** "Questions involving whether an insured is 'legally entitled to recover' for purposes of the underinsured motorist coverage generally are treated in the same manner as similar disputes involving uninsured motorist insurance." 3 Widiss, at 167. In *Messner v. Amer-* *ican Union Insurance Company,* 119 S.W.3d 642 (Mo.App. S.D.2003), the Court applied the meaning of the phrase "legally entitled to recover" developed in the uninsured-motor-vehicle cases in the context of an underinsured-motor-vehicle claim.

underinsured-motor-vehicle claim and that the release was not an admission of fault. The Amatos then sued State Farm under the provisions of their underinsured-motor-vehicle coverage, and the Amatos' action against State Farm went to trial. The Amatos' evidence of Mr. Sherwood's negligence consisted of Mr. Amato's testimony describing the accident. Evidence that the Amatos settled for Mr. Sherwood's $50,000 policy limits was also introduced. At trial and on appeal, the Amatos maintain the position that the settlement estops State Farm from litigating the negligence issue and that proof of the settlement entitles them to a directed verdict in their favor on the question of the liability of State Farm as their underinsured-motor-vehicle carrier.

However, as is clear from the language in the release, the Amatos' settlement with Mr. Sherwood did not estop State Farm from litigating the negligence issue. Under Missouri law, an insured is required to establish liability, that is, causal negligence or fault, on the part of the other driver in order for the insured to be "legally entitled to collect" and thus prevail on a claim for underinsured-motor-vehicle coverage. *Oates*, 583 S.W.2d at 716; *Lewis*, 857 S.W.2d at 467; *Sago*, 827 S.W.2d at 755; *Reese*, 457 S.W.2d at 208. At trial, the Amatos failed to establish such liability. Therefore, the trial court did not err in denying the Amatos' motion for directed verdict and their post-trial motion. Point denied. The judgment of the trial court is affirmed.

GLENN A. NORTON, P.J., and KENNETH M. ROMINES, J., concur.