136 P.3d 135 (2006)
133 Wash.App. 439
Shanda McILLWAIN, individually, and as Personal Representative of the Estate of Kerry T. McIllwain, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance company, Respondent.
No. 23679-0-III.
Court of Appeals of Washington, Division 3.
June 8, 2006.
*136 Michael Rex Tabler, Attorney at Law, Ephrata, WA, for Appellant.
Steven M. Cronin, Attorney at Law, Spokane, WA, for Respondent.
SCHULTHEIS, J.
¶ 1 An insurance policy for an underinsured motorist (UIM) provided that the insurer and insured must resolve two issues by agreement or arbitration: (1) if the insured is legally entitled to collect damages from the underinsured vehicle; and (2) if so, in what amount. Shanda McIllwain sought benefits under such a policy after she settled personal injury and wrongful death claims with the other driver after a motorcycle accident in which she was injured and her husband was killed. State Farm Mutual Automobile Insurance Company (State Farm) insured both Ms. McIllwain and the other driver. Ms. McIllwain urges this court to adopt the holding of the Montana Supreme Court in Dill v. Montana Thirteenth Judicial District Court, 1999 MT 85, ¶ 22, 294 Mont. 134, 979 P.2d 188, which concluded that UIM insureds had shown they were "legally entitled to collect damages" from an underinsured driver under the UIM policy because they had collected the policy limits from the same insurance carrier in its capacity as the other driver's liability insurance carrier. We conclude that Dill is incompatible with Washington law and affirm the trial court's orders.

FACTS
¶ 2 Ms. McIllwain was a passenger on a motorcycle operated by her husband Kerry, when it collided with another motorcycle driven by their traveling companion Tony Knigge, on Interstate 90 in Montana on August 2, 2002. Both motorcycles were traveling in the right-hand traffic lane.[1] Mr. Knigge was leading and on the left and the McIllwains were on the right and behind. Mr. Knigge's motorcycle suddenly drifted to the right and slowed as he leaned down to switch from the main gas tank to the reserve. The left front wheel nut of the McIllwains' motorcycle became lodged upon the rear side exhaust pipe of Mr. Knigge's motorcycle, putting both motorcycles into a skid. Mr. McIllwain was killed and Ms. McIllwain was injured.
¶ 3 Ms. McIllwain, individually and as the personal representative of her husband's estate, filed personal injury and wrongful death suits against Mr. Knigge. Mr. Knigge and the McIllwains were both insured by State Farm. State Farm settled both claims by tendering the policy limits. Ms. McIllwain reserved her right to present UIM claims to State Farm.
¶ 4 Ms. McIllwain then made a claim for UIM benefits. The policy provides:
Deciding Fault and Amount
Two questions must be decided by agreement between the insured and us:
1. Is the insured legally entitled to collect damages from the owner or driver of the underinsured motor vehicle; and
2. If so, in what amount?

Clerk's Papers (CP) at 28 (emphasis added).
¶ 5 If there is no agreement, the questions are to be decided by arbitration. Ms. McIllwain wished to proceed to arbitration solely on the amount of damages. She asserted that she already proved she was legally entitled to collect damages from Mr. *137 Knigge because State Farm had tendered the policy limits on his behalf. State Farm disagreed. Ms. McIllwain filed an action for declaratory judgment. The parties filed cross-motions for summary judgment. The trial court decided in favor of State Farm. An order of summary judgment was granted and a declaratory judgment was entered. The parties were ordered to proceed to arbitration to determine both liability and damages.

DISCUSSION
¶ 6 Ms. McIllwain asks the court to adopt the rationale of the Montana Supreme Court in Dill, 1999 MT 85, 294 Mont. 134, 979 P.2d 188, when examining the provisions of her UIM insurance contract with State Farm.[2] "Interpretation of an insurance policy is a question of law that we review de novo." McCauley v. Metro. Prop. & Cas. Ins. Co., 109 Wash.App. 628, 632, 36 P.3d 1110 (2001). We also review declaratory judgments de novo. In re Estate of Gardner, 103 Wash. App. 557, 561, 13 P.3d 655 (2000).
¶ 7 In Dill, the parents of a boy hit by a car brought an action for damages against the driver. They joined State Farm as a defendant, which insured the driver and provided UIM coverage to the parents. After filing the complaint, the parents settled their claims against the tortfeasor and reserved their right to proceed against their insurer. State Farm moved to prohibit the parents from informing the jury that the tortfeasor had been insured or that they carried underinsured motorist coverage with State Farm. The trial court granted those motions and held that the action against State Farm was not ripe for adjudication until the tortfeasor's fault had been established and damages assessed in the negligence action. On appeal, the Montana Supreme Court held that because the action against State Farm sounded in contract and the UIM policy required the insureds to prove they were legally entitled to recover damageswhich they did when they collected a settlement of $100,000 from the underinsured driver's insurerthe only issue remaining was the amount of damages recoverable under the UIM policy. Dill, 1999 MT 85, ¶¶ 15-16, 294 Mont. 134, 979 P.2d 188.
¶ 8 The Dill court examined essentially the same policy language as in Ms. McIllwain's contract: the two questions that must be determined by agreement between the insured and State Farm or by arbitration or litigation are (a) whether the insured is legally entitled to collect damages from the driver of the underinsured motor vehicle, and (b) if so, in what amount. Id. ¶ 16. The court simply stated:
Regardless of whether anyone was at fault for the damages caused to the [parents], it is clear by the fact that the [parents] received $100,000 from State Farm that they are "entitled to collect damages." The only question remaining, therefore, is what amount the [parents] are entitled to collect beyond $100,000.
Id.
¶ 9 The critical issue here is whether Ms. McIllwain is legally entitled to collect damages. Dill reasoned:
The question of whether anyone was at fault and the question of whether the insured is legally entitled to collect damages from the underinsured driver are not the same. One can be legally entitled to collect damages without first proving fault in a court of lawthe [parents] have done just that. Conversely, an insured could prove fault on the part of the defendant, and yet not be legally entitled to collect damages. The critical point to be noted is that the State Farm policy only requires that the insured show that he or she is legally "entitled to collect damages"not prove fault. The [parents] squarely answered that question in the affirmative when they collected [the policy limits] from State Farm in its capacity as the [driver's] liability insurance carrier. The common sense reading of the language of the policy leads to the logical conclusion *138 that if one collects damages, one is legally entitled to do so.
Id. ¶ 18.
¶ 10 When addressing the relationship between the UIM carrier and insured, the Dill court noted that while tort principles decide fault, the tort litigation was completed when the liability insured was released. Id. ¶ 19. At that point, contract principles dictate the relationship, and the UIM coverage is "a carrier's direct promise to its insured to pay the insured for a loss." Id. (citing Kratz v. Kratz, 1995 OK 63, 905 P.2d 753, 755). Therefore, "[w]hen State Farm accepted a premium from the [parents] for underinsured motorist coverage, it contractually established its own liability for the tort of another." Id. In Washington we take a similar view of the parties' relationship.
¶ 11 An insurance policy is a contract. RCW 48.01.040. A claim against the insurance company for underinsured motorist coverage is an action on the policy that sounds in contract, although an underlying tortious injury is also involved, which affects the contract claim. Girtz v. N.H. Ins. Co., 65 Wash.App. 419, 422-23, 828 P.2d 90 (1992). We apply contract law to interpret the insurance policy, mindful that the insured's right to underinsured motorist benefits hinges on the existence of a tort cause of action against the underinsured motorist. E.g., Daley v. Allstate Ins. Co., 135 Wash.2d 777, 783-85, 958 P.2d 990 (1998); Keenan v. Indus. Indem. Ins. Co. of N.W., 108 Wash.2d 314, 321, 738 P.2d 270 (1987). The relationship of the UIM insurer and insured is contractual, but the obligation to offer UIM coverage is statutory. Fisher v. Allstate Ins. Co., 136 Wash.2d 240, 245, 961 P.2d 350 (1998). Washington's underinsured motorist statute requires UIM insurance to be "provided . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles." RCW 48.22.030(2). UIM insurers cannot reduce statutorily mandated UIM coverage through language in the insurance policy. Liberty Mut. Ins. Co. v. Tripp, 144 Wash.2d 1, 12, 25 P.3d 997 (2001) (citing Britton v. Safeco Ins. Co. of Am., 104 Wash.2d 518, 531, 707 P.2d 125 (1985)). "The UIM statute is `"liberally construed in order to provide broad protection against financially irresponsible motorists."'" Diaz v. Nat'l Car Rental Sys., Inc., 143 Wash.2d 57, 61, 17 P.3d 603 (2001) (quoting Clements v. Travelers Indem. Co., 121 Wash.2d 243, 251, 850 P.2d 1298 (1993) (quoting Kenworthy v. Pa. Gen. Ins. Co., 113 Wash.2d 309, 313, 779 P.2d 257 (1989))). Consequently, in Washington, we consider contract principles, public policy, and legislative intent when deciding UIM cases. E.g., Allstate Ins. Co. v. Ostenson, 105 Wash.2d 244, 247-48, 713 P.2d 733 (1986); Sayan v. United Servs. Auto. Ass'n, 43 Wash.App. 148, 153, 716 P.2d 895 (1986).
¶ 12 Dill reads the phrase "legally entitled to damages" to mean something other than "first proving fault in a court of law." Dill, 1999 MT 85, ¶ 18, 294 Mont. 134, 979 P.2d 188. We agree that the legally entitled to damages provision does not necessarily require that the insured prove fault in court action or obtain judgment from the tortfeasor. See, e.g., Elovich v. Nationwide Ins. Co., 104 Wash.2d 543, 550-52, 707 P.2d 1319 (1985) (holding a UIM insured is not required to exhaust tortfeasor's liability coverage before recovering under his or her UIM claim); but see Allstate Ins. Co. v. Batacan, 139 Wash.2d 443, 449-50, 986 P.2d 823 (1999) (holding that uninsured tortfeasor was not jointly and severally liable for the percentage share of other potential tortfeasors because an actual judgment had not been entered). A disposition by a court is not generally required. However, no Washington court has held that a UIM insured can be legally entitled to collect damages without being at fault.
¶ 13 In Washington, the insured is legally entitled to recover and an insurer required to pay only to the extent that an action against the tortfeasor would have been viable if the other party would have been insured. Sayan, 43 Wash.App. at 158-60, 716 P.2d 895; Keenan, 108 Wash.2d at 321, 738 P.2d 270; Romanick v. Aetna Cas. & Sur. Co., 59 Wash.App. 53, 57, 795 P.2d 728 (1990); Allstate Ins. Co. v. Dejbod, 63 Wash. App. 278, 281-83, 818 P.2d 608 (1991); Bohme v. Pemco Mut. Ins. Co., 127 Wash.2d *139 409, 419, 899 P.2d 787 (1995). That means that the insured must be capable of showing that he or she could obtain a judgment in his or her favor, i.e., prove the elements of a tort claim including fault and overcome defenses. Sayan, 43 Wash.App. at 152-53, 716 P.2d 895; Romanick, 59 Wash.App. at 58, 795 P.2d 728. "[UIM policies] are the only coverages predicated on the negligence of a third party. The insurer is therefore liable to its insured only in the event of damages caused by the negligence of an uninsured motorist." Price v. Farmers Ins. Co., 133 Wash.2d 490, 497 n. 5, 946 P.2d 388 (1997).[3] A UIM policy only provides coverage to its insured for injuries caused by an at-fault underinsured motorist. Dixie Ins. Co. v. Mello, 75 Wash.App. 328, 333-34, 877 P.2d 740 (1994). Lack of fault or inability to show negligence on the part of the alleged tortfeasor is a legal bar to recovery.
¶ 14 In Dejbod, Division Two of this court recognized that fault was essential to being legally entitled to recover. Dejbod, 63 Wash. App. at 284-85, 818 P.2d 608. It also acknowledged that payment of a settlement is made for reasons other than liability. Id. at 286, 818 P.2d 608. There, a UIM insured collided with two cars. The insured sued both drivers and settled with each; one settlement was for the liability limits of $25,000 and the other was for $11,000 of the $100,000 policy limits. Id. at 280, 818 P.2d 608. When the insured sought enforcement of his UIM policy arbitration provision, the insurer insisted that because the two liability policies were "applicable" under RCW 48.22.030(1),[4] it was entitled to deduct the limits of the two liability policies ($125,000) from the amount of damages the insured proved at arbitration as opposed to the amounts that the insured actually collected from the two policies ($36,000). Id. Division Two of this court disagreed. Central to its reasoning was the fact that the fault of the tortfeasors had not yet been litigated. Under the facts, nonliability was the only reason the UIM insured would not be legally entitled to recover from the alleged tortfeasors. Id. at 284-85, 818 P.2d 608. The court logically observed that the insured would not be legally entitled to recover if one or both of the other drivers were found not to be liable for the accident. Id. at 285, 818 P.2d 608. The court also recognized that payment of a settlement by the drivers' insurer was not dispositive of liability:
The fact that a liability carrier voluntarily settles with or pays an injured claimant does not, without more, establish that the carrier's insured is liable to the claimant, or that the insured's liability policy is "applicable" to the claimant within the meaning of RCW 48.22.030(1). Settlements and payments are often made for reasons only tangentially related to the liability of the insured, including avoidance of the costs of litigation, and they are not equivalent to an adjudication of liability through litigation or arbitration. Without more, they do not establish the liability of the person on whose behalf payment is made.
Id. at 286, 818 P.2d 608 (citation omitted).
¶ 15 We find the Dejbod analysis persuasive. Although being legally entitled to damages is among the reasons an insurance carrier will voluntarily settle, it is not an exclusive reason for settlement.
¶ 16 Ms. McIllwain argues that Dill is consistent with the "strong policy to ensure the availability of a source of recovery for an innocent automobile-accident victim when the responsible party does not possess adequate *140 liability insurance." Appellant's Br. at 9. Fisher, 136 Wash.2d at 245, 961 P.2d 350; Bohme, 127 Wash.2d at 413-14, 899 P.2d 787; Finney v. Farmers Ins. Co., 92 Wash.2d 748, 751, 600 P.2d 1272 (1979). We disagree. Adoption of the rule in Dill would not respect that policy because it would afford damages to those who are not necessarily innocent victims since Dill does not require that fault be determined. UIM coverage is not intended to provide compensation for the insured's own negligence. See Rones v. Safeco Ins. Co., 119 Wash.2d 650, 655, 835 P.2d 1036 (1992).
¶ 17 The Montana Supreme Court's simplistic conclusion in Dill, 1999 MT 85, ¶ 18, 294 Mont. 134, 979 P.2d 188, that a "common sense reading of the language of the policy leads to the logical conclusion that if one collects damages, one is legally entitled to do so" is incompatible with Washington law. We decline to adopt it.
¶ 18 "[P]arties are free to decide by contract whether to arbitrate, and which issues are submitted to arbitration." Godfrey v. Hartford Cas. Ins. Co., 142 Wash.2d 885, 894, 16 P.3d 617 (2001). Here, the parties contracted that they must either agree or arbitrate two questions: (1) if the insured is legally entitled to collect damages from the underinsured vehicle; and (2) if so, in what amount. The question of whether Ms. McIllwain is legally entitled to collect damages was neither agreed nor arbitrated. Nor was that determination made in a different action. See Fisher, 136 Wash.2d 240, 961 P.2d 350; Finney v. Farmers Ins. Co., 21 Wash.App. 601, 586 P.2d 519 (1978), aff'd, 92 Wash.2d 748, 600 P.2d 1272 (1979). The trial court properly interpreted the policy to require that the determination of whether Ms. McIllwain was legally entitled to damages be arbitrated since the parties did not agree. We therefore affirm the trial court's orders.
WE CONCUR: SWEENEY, C.J., and BROWN, J.
NOTES
[1] This is permitted under Montana law. See Mont.Code Ann. § 61-8-359(7).
[2] The parties do not dispute that Washington law applies. Our courts defer to the parties' choice of law when it is clearly expressed. Crawford v. Seattle, Renton & S. Ry. Co., 86 Wash. 628, 635, 150 P. 1155 (1915).
[3] See also 1 ALAN I. WIDISS & JEFFREY E. THOMAS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 7.1, at 362 (rev.3d ed. 2005) ("It is clear that [legally entitled to recover] is intended to mean that insurance exists only when bodily injuries have been caused by a negligent uninsured motorist" (emphasis added)); § 7.2, at 363 ("The right of an insured to recover under the uninsured motorist coverage is contingent on the insured being legally entitled to recovery because the injuries were caused by the negligent operation of an uninsured highway motor vehicle.... Courts in many jurisdictions have affirmed that the term `legally entitled' means that the injuries must result from the negligent conduct of an uninsured motorist."); § 7.3, at 373.
[4] "RCW 48.22.030(1) obligates a UIM carrier to pay (1) a claimant's legally recoverable (`applicable') damages or UIM limits, whichever is less, minus (2) `the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident.'" Dejbod, 63 Wash.App. at 284, 818 P.2d 608.