# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CARLOS PACHECO,<br><br>                Appellant,<br><br>       v.<br><br>OREGON MUTUAL INSURANCE<br>COMPANY, a foreign insurance<br>company,<br><br>              Respondent. | No. 77525-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br><br>FILED: August 19, 2019 |

APPELWICK, C.J. — Pacheco filed a claim under the underinsured motorist insurance coverage under a policy provided by Oregon Mutual. The policy expressly excluded coverage for diminished value and loss of use. Pacheco sought discretionary review from denial of his motion to determine that both exclusions are contrary to RCW 48.22.030 and violate public policy. We hold that the exclusion for diminished value violates the language of the statute, but that the exclusion for loss of use does not violate either the language of the statute or public policy. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

On May 15, 2016, an uninsured driver damaged Carlos Pacheco's 2014 Audi. Pacheco made a claim to Oregon Mutual Insurance Company under the policy's underinsured motorist coverage. Oregon Mutual accepted coverage, and made $16,115 in payments on the claim, including the $1,050 limit for rental car

expenses. Oregon Mutual did not pay for alleged diminished value damages, nor did it pay for loss of use damages beyond the amount provided for rental car coverage. Oregon Mutual informed Pacheco, "The uninsured motorist property damage provisions of the policy . . . unambiguously exclude such coverage" for loss of use and diminished value.

Pacheco filed suit against Oregon Mutual in King County District Court. The complaint sought payment of the excluded damages for "diminished value and loss of use," attorney fees, and interest. Pacheco then filed a motion for partial summary judgment, requesting a determination that, "while the plain language of the policy excludes those damages from the benefits recoverable, said exclusion is void as contrary to public policy."[1] The district court granted the motion as to the diminished value exclusion where the diminished value is caused by "unrepairable continuing physical damage." But, the court ruled that there was no basis to void an exclusion for loss of use damages.

Both parties filed motions for reconsideration. The district court denied both motions, leaving its original decision in place. Oregon Mutual filed a notice of appeal to the King County Superior Court, and Pacheco filed a notice of cross-appeal.

The superior court reversed the district court's order as to the finding that exclusions for diminished value damages are void, and affirmed the finding as to

---

[1] In support of his motion for partial summary judgment, Pacheco offered a declaration from Darrell Harber, who had over 28 years of experience in the automotive collision repair industry. Harber opined that the accident had reduced the value of Pacheco's Audi by $7,950.

loss of use damages. Pursuant to CR 54(b), the trial court certified that its order is eligible for discretionary review. Pacheco sought review, which this court granted.

## DISCUSSION

### I. Standard of Review

An appellate court reviews de novo a grant of summary judgment. Bostain v. Food Exp., Inc., 159 Wn.2d 700, 708, 153 P.3d 846 (2007). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id. Facts and reasonable inferences therefrom are viewed most favorably to the nonmoving party. Id.

When interpreting a statute, the court first looks to its plain language. Homestreet, Inc. v. Dep't. of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). Our function is to give effect to the object and intent of the Legislature. Hoa Doan v. Dep't of Labor & Indus., 143 Wn. App. 596, 601, 178 P.3d 1074 (2008).

### II. Underinsured Motorist Statute

Washington law requires mandatory minimum liability automobile insurance. RCW 46.60.020. Washington law also requires that all insurers make UIM coverage available to Washington automobile liability policyholders. Clements v. Travelers Indem. Co., 121 Wn.2d 243, 250, 850 P.2d 1298 (1993); RCW 48.22.030(2). The purpose of the UIM statute is "to protect innocent victims of motorists of underinsured motor vehicles." RCW 48.22.030(12). UIM coverage is not mandated, and policyholders can waive all or part of that coverage. RCW 48.22.030(4).

The relevant text of the UIM statute is RCW 48.22.030:

(1) "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

(2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom, except while operating or occupying a motorcycle or motor-driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy. The coverage required to be offered under this chapter is not applicable to general liability policies, commonly known as umbrella policies, or other policies which apply only as excess to the insurance directly applicable to the vehicle insured.

(3) Except as to property damage, coverage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section. Coverage for property damage need only be issued in conjunction with coverage for bodily injury or death. Property damage coverage required under subsection (2) of this section shall mean physical damage to the insured motor vehicle unless the policy specifically provides coverage for the contents thereof or other forms of property damage.

(4) A named insured or spouse may reject, in writing, underinsured coverage for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply. If a named insured or spouse has rejected

underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless a named insured or spouse subsequently requests such coverage in writing. The requirement of a written rejection under this subsection shall apply only to the original issuance of policies issued after July 24, 1983, and not to any renewal or replacement policy. When a named insured or spouse chooses a property damage coverage that is less than the insured's third party liability coverage for property damage, a written rejection is not required.

(5) The limit of liability under the policy coverage may be defined as the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the policy, or premiums paid, or vehicles involved in an accident.

(6) The policy may provide that if an injured person has other similar insurance available to him or her under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages.

(7)(a) The policy may provide for a deductible of not more than three hundred dollars for payment for property damage when the damage is caused by a hit-and-run driver or a phantom vehicle.

(b) In all other cases of underinsured property damage coverage, the policy may provide for a deductible of not more than one hundred dollars.

(8) For the purposes of this chapter, a "phantom vehicle" shall mean a motor vehicle which causes bodily injury, death, or property damage to an insured and has no physical contact with the insured or the vehicle which the insured is occupying at the time of the accident if:

(a) The facts of the accident can be corroborated by competent evidence other than the testimony of the insured or any person having an underinsured motorist claim resulting from the accident; and

(b) The accident has been reported to the appropriate law enforcement agency within seventy-two hours of the accident.

(9) An insurer who elects to write motorcycle or motor-driven cycle insurance in this state must provide information to prospective insureds about the coverage.

(10) An insurer who elects to write motorcycle or motor-driven cycle insurance in this state must provide an opportunity for named insureds, who have purchased liability coverage for a motorcycle or motor-driven cycle, to reject underinsured coverage for that motorcycle or motor-driven cycle in writing.

(11) If the covered person seeking underinsured motorist coverage under this section was the intended victim of the tort feasor [sic], the incident must be reported to the appropriate law enforcement agency and the covered person must cooperate with any related law enforcement investigation.

(12) The purpose of this section is to protect innocent victims of motorists of underinsured motor vehicles. Covered persons are entitled to coverage without regard to whether an incident was intentionally caused. However, a person is not entitled to coverage if the insurer can demonstrate that the covered person intended to cause the event for which a claim is made under the coverage described in this section. As used in this section, and in the section of policies providing the underinsured motorist coverage described in this section, "accident" means an occurrence that is unexpected and unintended from the standpoint of the covered person.

(13) The coverage under this section may be excluded as provided for under RCW 48.177.010(6).[2]

(14) "Underinsured coverage," for the purposes of this section, means coverage for "underinsured motor vehicles," as defined in subsection (1) of this section.

Pacheco argues that the superior court erred in failing to find that RCW 48.22.030 requires coverage for damages for diminished value and loss of use.[3]

---

[2] RCW 48.177.010(6) provides: "Insurers that write automobile insurance in Washington may exclude any and all coverage afforded under a private passenger automobile insurance policy issued to an owner or operator of a personal vehicle for any loss or injury that occurs while a driver for a commercial transportation services provider is logged in to a commercial transportation services provider's digital network or while a driver provides a prearranged ride. This right to exclude all coverage may apply to any coverage included in a private passenger automobile insurance policy including, but not limited to: . . . (c) Underinsured motorist coverage." This is the only explicit exclusion enumerated in the statute.

[3] Pacheco did not assert below, and does not argue on appeal, that the Oregon Mutual policy included coverage for diminished value and loss of use. Instead, he argues that the policy's exclusions for such coverage violate the statute in question.

And, Pacheco argues the exclusions for diminished value and loss of use in the underinsured motorist policy he holds are void as contrary to the UIM statute and public policy.[4] He reads RCW 48.22.030(2) as requiring coverage for all damages because of bodily injury, death, or property damage, including consequential damages. The statute provides, "Property damage coverage required under subsection (2) of this section shall mean physical damage to the insured motor vehicle unless the policy specifically provides coverage for the contents thereof or other forms of property damage." RCW 48.22.030(3).

Framing this case first as one of statutory interpretation, Pacheco asserts, "While the statute notes that 'property damage' 'shall mean' 'physical damage,' this is a definition as to what risks are covered, not a limitation to the covered damages, and it impacts nothing but the phrase it defines: i.e., 'property damage.'" He asserts, "Applying the statutory definition language as to the covered risks, the purpose is still clear: <u>coverage must be provided to protect insureds 'legally entitled to recover damages' 'because of' 'physical damage.'</u>"

We begin by analyzing the language of the subsection that mandates the insurance offering:

> (2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental

---

[4] Oregon Mutual asserted below that Pacheco's expert combined stigma and diminished value damages in his analysis. But, Pacheco presented his argument as purely an issue of law on his motion for partial summary judgment, and the distinction of damages was not discussed.

7

thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom, except while operating or occupying a motorcycle or motor-driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy. The coverage required to be offered under this chapter is not applicable to general liability policies, commonly known as umbrella policies, or other policies which apply only as excess to the insurance directly applicable to the vehicle insured.

RCW 48.22.030(2).

The statutory mandate language, "No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state" is based on the definitions of motor vehicle, RCW 48.22.005(1), and automobile liability policy, RCW 48.22.005(8). It could be replaced by "No automobile liability insurance policy shall be issued . . . ."[5]

---

[5] RCW 48.22.005 provides these definitions:

(1) "Automobile" means a passenger car as defined in RCW 46.04.382 registered or principally garaged in this state other than:
(a) A farm-type tractor or other self-propelled equipment designed for use principally off public roads;
(b) A vehicle operated on rails or crawler-treads;
(c) A vehicle located for use as a residence;
(d) A motor home as defined in RCW 46.04.305; or
(e) A moped as defined in RCW 46.04.304.
. . . .
(8) "Automobile liability insurance policy" means a policy insuring against loss resulting from liability imposed by law for bodily

8

The exceptions in this subsection to the mandated coverage offering also derive from the definitions of automobile and automobile liability insurance policy found in RCW 48.22.005, and of passenger car found in RCW 46.04.382:

> [E]xcept while operating or occupying a motorcycle or motor-driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy. The coverage required to be offered under this chapter is not applicable to general liability policies, commonly known as umbrella policies, or other policies which apply only as excess to the insurance directly applicable to the vehicle insured.

RCW 48.22.030(2). Offering UIM motorcycle coverage is optional under RCW 48.22.030(9) and (10). The exceptions are of no interest in this case.

The focus here is on the remaining language, stating that no automobile liability insurance policy shall be issued "unless coverage is provided . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom."[6] RCW 48.22.030(2). The key is that the clause

---

injury, death, or property damage suffered by any person and arising out of the ownership, maintenance, or use of an insured automobile. An automobile liability policy does not include:
    (a) Vendors single interest or collateral protection coverage;
    (b) General liability insurance; or
    (c) Excess liability insurance, commonly known as an umbrella policy, where coverage applies only as excess to an underlying automobile policy.
RCW 46.04.382 provides that "Passenger car" means every motor vehicle except motorcycles and motor-driven cycles, designed for carrying 10 passengers or less and used for the transportation of persons.

    [6] "Underinsured motor vehicle" is defined in RCW 48.22.030(1). "Phantom vehicle" is defined in RCW 48.22.030(8).

which begins with "who," modifies "persons insured." It is a limitation on whether an insured has coverage following an accident. The insured may recover under UIM coverage only if (1) the insured is legally entitled to recover damages; (2) those damages will be recovered from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles; and (3) the damages are because of bodily injury, death, or property damage, resulting from the accident. The use of the phrases "legally entitled to recover damages" and "because of bodily injury, death, or property damage" does not change the clause from a limitation on whether an insured is covered for the accident into one defining the scope of coverage under the UIM policy.

While subsection (2) requires that UIM coverage be offered and defines when it is applicable, subsection (3) identifies the minimum scope of coverage:

> Except as to property damage, coverage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section. Coverage for property damage need only be issued in conjunction with coverage for bodily injury or death. Property damage coverage required under subsection (2) of this section shall mean physical damage to the insured motor vehicle unless the policy specifically provides coverage for the contents thereof or other forms of property damage.

RCW 48.22.030(3). This subsection treats property coverage differently from bodily injury or death coverage in several ways. Property damage coverage need be issued only in conjunction with coverage for bodily injury or death, not as a standalone coverage. Property damage need not be the same amount as the insured's third party liability coverage, while other coverages must be. "Property damage" is defined, and defined narrowly, as "physical damage to the insured

motor vehicle." Coverage of vehicle contents or other forms of property damage is optional. And, under subsection (7), minimal deductibles for property damage coverage are prescribed.

The plain reading of the statutory language requires that physical damage to the insured motor vehicle must be covered. Other property damages, including consequential damages, are not require to be covered by the UIM policy.

III.   Exclusions

UIM insurers cannot reduce statutorily mandated UIM coverage through language in the insurance policy. McIllwain v. State Farm Mut. Auto. Ins. Co., 133 Wn. App. 439, 446, 136 P.3d 135 (2006). The terms and conditions of the insured's contract with the UIM carrier must be consistent with the statute and cases construing it. Blackburn v. Safeco Ins. Co., 115 Wn.2d 82, 86, 794 P.2d 1259 (1990). Our Supreme Court has addressed exclusions under UIM coverage:

> In determining the validity of a UIM exclusionary clause the court applies a two-part test which asks: "Does the proposed exclusion conflict with the express language of the UIM statute? If not, is the exclusion contrary to the UIM statute's declared public policy?" A UIM exclusionary clause will be upheld only if we can answer both inquiries in the negative.

Greengo v. Pub. Employees Mut. Ins. Co., 135 Wn.2d 799, 806, 959 P.2d 657 (1998) (quoting Bohme v. PEMCO Mut. Ins. Co., 127 Wn.2d 409, 412, 899 P.2d 787 (1995)). In Greengo, the court also stated, "[L]ack of express statutory authorization for the precise exclusion is not the focus of our inquiry. Instead we look to whether such exclusion conflicts with the statute." Id. at 808.[7]

---

[7] Again, the only explicit exclusion enumerated in the statute, under subsection (13), is "for any loss or injury that occurs while a driver for a commercial

Addressing the diminished value exclusion, we must ask first whether the exclusion for diminished value conflicts with the express language of the UIM statute. In Moeller, the court set out diminished value, explaining, "'A vehicle suffers "diminished value" when it sustains physical damage in an accident, but due to the nature of the damage, it cannot be fully restored to its preloss condition. Weakened metal that cannot be repaired is one such example.'" Moeller v. Farmers Ins. Co. of Wash., 173 Wn.2d 264, 271, 267 P.3d 998 (2011) (quoting Moeller v. Farmers Ins. Co. of Wash., 155 Wn. App. 133, 142, 229 P.3d 857 (2010), aff'd 173 Wn.2d 264.). Thus, under Washington case law, the diminished value of a vehicle from physical injury is property damage as defined in the UIM statute. An express policy exclusion for coverage for diminished value of the damaged vehicle is therefore contrary to the UIM statutory language. Having answered the first question under Greengo in the affirmative, we need not answer the second question of whether it conflicts with public policy.

Addressing the loss of use exclusion, we must ask first whether the exclusion for loss of use conflicts with the express language of the UIM statute. Loss of use may flow from physical damage to a vehicle, but it is not physical damage to the vehicle. Loss of use is not property damage as defined in RCW 48.22.030. Because it is not required by the statute, it does not violate the express language of the statute to exclude it.

---

transportation services provider is logged in to a commercial transportation services provider's digital network or while a driver provides a prearranged ride." RCW 48.22.030(13); RCW 48.177.010(6). It does not apply here.

12

Having answered the first question in the negative, under Greengo, we ask next whether the exclusion for loss of use violates public policy. The declared public policy of the UIM statute is to protect innocent insureds. RCW 48.22.030(12). The protection afforded by the statute is not absolute.[8] The legislature defined property damage coverage narrowly as "physical damage to the insured motor vehicle." RCW 48.22.030(3). It made additional coverage optional rather than mandatory with the clause "unless the policy specifically provides coverage for the contents thereof or other forms of property damage." Id. This language, contained in the same section as the declared public policy, makes plain that damages such as loss of use are not required to be covered. An express UIM policy exclusion for loss of use of a vehicle is not inconsistent with the stated public policy.

We conclude that a UIM policy exclusion for diminished value resulting from physical damage to a vehicle is void. The trial court erred in finding that the exclusion for diminished value is not void. However, because the statutory language and declared public policy do not require coverage for loss of use as property damage, the trial court did not err in upholding the exclusion for loss of use in the UIM policy.

IV.  Attorney Fees

Pacheco requests attorney fees under Olympic S.S. Co. v. Centennial Ins.

---

[8] Our State Supreme Court has stressed that the public policy underlying the UIM statute is to create a second layer of floating protection for the insured, not to guarantee full compensation for accident victims. Greengo, 135 Wn.2d at 809-10. And, subsections (4), (5), (6), and (7) of RCW 48.22.030 are each in some manner a potential limitation on recovery under UIM coverage.

Co., 117 Wn.2d 37, 811 P.2d 673 (1991).

In <u>Olympic Steamship</u>, the court held, "[A]n award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." 117 Wn.2d at 53. RAP 18.1(a) authorizes an award of fees on appeal if applicable law grants to a party the right to recover reasonable attorney fees. <u>Id.</u>

The State Supreme Court has expanded on the <u>Olympic Steamship</u> rule. <u>See</u> <u>Leingang v. Pierce County. Med. Bureau, Inc.</u>, 131 Wn.2d 133, 147, 930 P.2d 288 (1997). In <u>Leingang</u>, the court explained,

> If a claim is denied on the basis of an alleged lack of coverage and a court later determines there is coverage, then the case would fall under the rule of <u>Olympic Steamship</u>. The holding of <u>Olympic Steamship</u> and <u>Dayton</u>[9] is that an insured is entitled to attorney fees if the insured litigates an issue of coverage, but not if the issue is merely a dispute about the value of a claim. The present case is like the <u>McGreevy</u>[10] case in that the insurer admitted there was some coverage but disputed the scope of the coverage. Coverage disputes include both cases in which the issue of any coverage is disputed and cases in which "the extent of the benefit provided by an insurance contract" is at issue.

<u>Id.</u> (quoting <u>McGreevy</u>, 128 Wn.2d at 33). In <u>Leingang</u>, the dispute was over coverage as it was the claim of the insurer that the exclusion at issue denied possibility of recovery under any foreseeable facts. <u>Id.</u> The court held that the insurer was liable for the reasonable attorney fees its insured incurred in its

---

[9] <u>Dayton v. Farmers Ins. Grp.</u>, 124 Wn.2d 277, 876 P.2d 896 (1994).
[10] <u>McGreevy v. Oregon Mut. Ins. Co.</u>, 128 Wn.2d 26, 904 P.2d 731 (1995), <u>overruled on other grounds by</u> <u>Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.</u>, 144 Wn.2d 130, 26 P.3d 910 (2001).

successful effort to overcome the asserted policy exclusion from coverage. Id. at 147-48.

. In Greengo, the court reiterated that a party is entitled to attorney fees when an insurer wrongfully denies "coverage," as distinguished from the situation where "coverage" is conceded but the claim fails, or recovery is diminished on its factual merits. 135 Wn.2d at 817. The Greengo court answered "the threshold coverage question, while reserving the factual entitlement to a monetary recovery against the insurer, as well as the amount of that recovery, to remand." Id. at 817-18. But, the court found that awarding reasonable attorney fees at that stage was appropriate. Id. at 818.

Pacheco had to pursue legal action to obtain a determination that the policy cannot exclude coverage for diminished value. Pursuant to Greengo, awarding Pacheco appellate attorney fees at this stage of the proceeding is appropriate.

We affirm in part, reverse in part, and remand for further proceedings.

WE CONCUR: